**Opinion filed January 19, 2018**



## In The

# Eleventh Court of Appeals

_____

## No. 11-15-00310-CR

_____

### MERLIN JCOBIE MCCALISTER, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR44776**

## M E M O R A N D U M   O P I N I O N

The jury convicted Merlin Jcobie McCalister of evading arrest or detention with a motor vehicle and assessed his punishment at confinement for a term of two years and six months in the Institutional Division of the Texas Department of Criminal Justice and a fine of $8,000. In a single issue, Appellant contends that the trial court erred in admitting extraneous offense evidence. We affirm.

*Background Facts*

On the morning of February 18, 2015, Midland Police Officer Chris Seal was on duty patrol in a marked patrol car. He was initially dispatched to a disturbance on Cimmaron Street. While en route, dispatch advised him that the situation had progressed to a "mobile disturbance." Officer Seal then began searching for a black pickup.

Officer Seal testified that he first observed the pickup run a stop sign at an apparent speed "in excess of the speed limit" at the intersection of Ward Street and Shandon Avenue, which was located in a residential area. Officer Seal turned to follow the pickup and immediately activated his emergency lights and siren. However, the pickup did not stop. Officer Seal estimated that the pickup was driving approximately sixty miles per hour based on his own speed in trying to stop the pickup. The pickup slowed down at Whitney Drive but then ran a second stop sign, thereby leading Officer Seal to conclude that the driver was not willing to stop.

A video recording from Officer Seal's vehicle shows that Officer Seal pursued the pickup for approximately forty-four seconds before the driver came to a complete stop. The video recording also shows that, within that period, the pickup driver traveled approximately one and one-half blocks and disregarded opportunities to pull over safely. As soon as the pickup stopped, the driver got out of the pickup. Officer Seal drew his weapon and told the driver to get on the ground. Officer Seal testified that the driver of the pickup immediately complied. Officer Seal holstered his weapon and placed the driver in handcuffs. Officer Seal subsequently identified the driver as Appellant.

Over Appellant's objection, the State presented evidence during its case-in-chief regarding the dispute between Appellant and Ariel Windsor, his former fiancée, that led to the initial disturbance call. At a bench conference on the record, Appellant objected to Windsor being called as a witness on the bases that (1) the

alleged assault that Appellant committed against Windsor was not relevant because it was extraneous to the evading arrest charge and (2) evidence of the alleged assault was more prejudicial than probative. The prosecutor argued that the evidence was admissible to show Appellant's motive and intent at the time Officer Seal attempted to stop Appellant. The trial court overruled Appellant's objection and allowed Windsor to testify.

Windsor testified that she and Appellant were arguing that morning about her cell phone. Appellant took the cell phone from her and got into his pickup to leave. As Appellant put the pickup in reverse, Windsor grabbed the steering wheel and did not let go. Appellant drove with Windsor holding onto the steering wheel for a distance.

The State subsequently called Windsor's grandmother, Jamie Thompson, as a witness. Appellant and Windsor were living in an apartment attached to Thompson's home at the time of the incident. Thompson testified that she observed the argument and called 9-1-1 because she felt that Windsor "was in danger." The 9-1-1 recording was admitted as State's Exhibit No. 2 and played for the jury. On cross-examination, Appellant's trial counsel established that Thompson told Appellant that "[she] was calling [9-1-1], calling the police."

The State also called a passerby, Courtney Lunsford, as a witness. Lunsford testified that, when she came to a stop sign on Cimmaron Street, she observed Windsor "hanging out of the door" of a moving pickup. At that point, she called 9-1-1. This 9-1-1 recording was also admitted into evidence and played for the jury.

After the State rested its case-in-chief, Appellant recalled Officer Seal to the stand. Officer Seal testified that it was his understanding that Windsor was the "main aggressor" in the dispute, that no assault occurred, and that Appellant was never charged with assault.

3

*Analysis*

In a single issue, Appellant contends that the trial court abused its discretion in admitting evidence of an alleged act of violence committed by Appellant. He focuses his appellate issue on the trial court overruling his objection to Windsor's testimony. He contends that the admission of this evidence violated Rule 404(b). *See* TEX. R. EVID. 404. Alternatively, Appellant contends that the trial court erred under Rule 403 by failing to conduct the required balancing test. *See* TEX. R. EVID. 403. In response, the State asserts that Appellant waived his evidentiary complaint. The State also contends that the disputed testimony was admissible as same transaction contextual evidence with probative value that was not substantially outweighed by the danger of unfair prejudice.

As noted previously, Appellant objected to Windsor's testimony during a conference at the bench. Under Rule 103(b), when the trial court hears a party's objections outside the presence of the jury and rules that evidence is admissible, a party need not renew an objection to preserve a claim of error for appeal. *See* TEX. R. EVID. 103(b); *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005). The State contends that Appellant's trial counsel subsequently waived the objection by stating "no objection" to the admission of the 9-1-1 recording of Thompson's call to the police. The State characterizes this 9-1-1 recording as a "real time narration of the dispute."

In *Thomas v. State*, the Court of Criminal Appeals addressed waiver of a previously preserved objection by trial counsel's statement of "no objection." 408 S.W.3d 877, 885 (Tex. Crim. App. 2013). The court clarified that "the rule that a later statement of 'no objection' will forfeit earlier-preserved error is context-dependent." *Id.* Therefore, appellate courts should review the entirety of the record to determine if it "plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to constitute an abandonment of a

4

claim of error that he had earlier preserved for appeal." *Id.* Any ambiguity with regard to whether an abandonment was intended or understood should be resolved in favor of finding waiver. *Id.* at 885–86; *see Stairhime v. State*, 463 S.W.3d 902, 906 (Tex. Crim. App. 2015).

The record does not indicate that either Appellant or the trial court regarded counsel's "no objection" statement as an abandonment of Appellant's previous claim that the trial court erred in denying the motion to exclude evidence of the extraneous offense. We first note the testimony preceding the "no objection" comment. The prosecutor asked Thompson a series of questions to establish that her comments on the 9-1-1 recording constituted an excited utterance. *See* TEX. R. EVID. 803(2). Thus, one could presume that, by saying "no objection," Appellant's trial counsel simply did not wish to lodge a hearsay objection to the 9-1-1 recording. Afterwards, at the charge conference, Appellant's trial counsel requested that the trial court include an instruction in the charge pertaining to the jury's consideration of the extraneous offense evidence. Counsel premised the request on his earlier objection to the extraneous offense evidence. Both the State and the trial court agreed to include the instruction in the charge. Appellant also stressed during his closing argument that the testimony of the events leading up to Appellant's arrest did not concern the evading arrest and detention charge and that those events should not influence the jury's deliberations. Accordingly, we conclude that Appellant's subsequent "no objection" comment did not evince an intent to abandon his objection to the extraneous offense evidence.

We review a trial court's evidentiary ruling under an abuse of discretion standard. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). "A trial judge abuses his discretion when his decision falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). We will uphold the trial court's ruling on the admission or exclusion of evidence if the

ruling was proper under any legal theory or basis applicable to the case. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

"Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character." *Id.* (citing TEX. R. EVID. 404(b)). "However, extraneous offense evidence may be admissible when it has relevance apart from character conformity." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Accordingly, if an extraneous transaction is relevant to a material, non-propensity issue, it will generally fall within the zone of reasonable disagreement. *Devoe*, 354 S.W.3d at 469. Additionally, extraneous offense evidence is admissible to prove disputed elemental facts of the charged offense. *See Werner v. State*, 412 S.W.3d 542, 549 (Tex. Crim. App. 2013); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009).

The prosecutor asserted at trial that Windsor's testimony was relevant to show Appellant's motive or intent. The indictment charged Appellant with evading arrest or detention with a motor vehicle. *See* TEX. PENAL CODE ANN. § 38.04 (West 2016). Thus, the State was required to prove that Appellant intentionally fled, in a vehicle, from a person that he knew was a peace officer attempting to lawfully arrest or detain him. *Riggs v. State*, 482 S.W.3d 270, 275 (Tex. App.—Waco 2015, pet. ref'd).

A defendant's plea of not guilty does not automatically put his or her intent in dispute. *Robbins v. State*, 88 S.W.3d 256, 260 (Tex. Crim. App. 2002). Rather, intent is a disputed issue if the accused presented evidence to rebut the inference that the required intent existed. *Id.*; *see Sandoval v. State*, 409 S.W.3d 259, 299 (Tex. App.—Austin 2013, no pet.). In this case, the trial court could have reasonably determined that Appellant put his intent in dispute through his opening statement

6

and cross-examination of Officer Seal. In Appellant's opening statement, his trial counsel argued as follows: "The State has to prove each and every element of this allegation. Each and every one of them. [Appellant] was evading detention or arrest from a police officer that he knew was attempting to arrest or detain him. They have to prove all of that." Additionally, through his cross-examination of Officer Seal, Appellant's trial counsel presented the defensive theory that it was possible that Appellant could not see the emergency lights based on the time of day, location of the sun, and dark tint of the rear window in Appellant's pickup. Presumably, such questioning was an attempt to negate Appellant's intent to flee from Officer Seal or knowledge that Officer Seal was attempting to lawfully detain him. Appellant's trial counsel subsequently argued this contention in his summation to the jury:

> Christopher Seal sat here and testified that he was on patrol that day. And he testified to a couple of things. We'll start at the top.
>
> Conditions for daytime lights are, you know, slightly less visible for nighttime, so there's a possibility. You know, they were headed westbound on Shandon, the sun rises in the east, sets in the west. It was early in the morning. It's a possibility. That's all I asked was a possibility. The sun could have been behind him at that point. And Officer Seal wasn't in the vehicle. He couldn't say for sure what [Appellant] could or could not see or could or could not hear. He wasn't even in his mind. He doesn't know what he was going through at that point.

Thus, the issue of intent was disputed at trial with respect to whether Appellant knew Officer Seal was attempting to detain him. The fact that Appellant was accused of assaulting Windsor and that his conduct was the subject of a report to the police was relevant to the issue of his intent at the time Officer Seal attempted to detain him. Accordingly, the extraneous offense evidence had a purpose other than showing character conformity. We conclude that the trial court did not abuse its discretion by overruling Appellant's Rule 404(b) objection.

7

Even if extraneous offense evidence is relevant under Rule 404(b), the trial court may exclude it if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence. TEX. R. EVID. 403; *see Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Appellant contends that the trial court failed to conduct the required Rule 403 balancing test in response to his objection under the rule.

Rule 403 excludes relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007). When undertaking a Rule 403 analysis, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

A trial court has no discretion to refuse to conduct a balancing test. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991). However, "[a] trial court is not required to perform a balancing test in a formal hearing on the record." *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd) (citing *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997)). We will presume a trial judge conducted the balancing test absent contrary evidence in the record. *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998); *see*

8

*Patterson v. State*, 496 S.W.3d 919, 929 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Thus, by overruling Appellant's objection, the trial court implicitly conducted the Rule 403 balancing test. *Greene*, 287 S.W.3d at 284.

Applying the factors listed above, we conclude that the trial court did not abuse its discretion in overruling Appellant's Rule 403 objection. We have previously discussed the probative nature of the extraneous offense evidence as providing an explanation for why Officer Seal was attempting to detain Appellant. The trial court could have reasonably concluded that the State needed to introduce the evidence to prove Appellant's intent to evade detention or his knowledge that a police officer was attempting to detain him, both of which are elements of the charged offense. Conversely, the record does not show that the evidence about the circumstances leading to Appellant's arrest had the potential to impress the jury in an irrational manner. The testimony about the altercation with Windsor was not particularly inflammatory. Furthermore, Appellant's trial counsel was able to obtain testimony from Officer Seal that he did not believe that Appellant had committed an assault. Additionally, the trial court provided a limiting instruction requested by Appellant with respect to the jury's consideration of the extraneous offense evidence. While three of the four State's witnesses testified solely to the altercation leading to Appellant's arrest, the testimony did not consume an inordinate amount of time in the rather brief trial on guilt/innocence.[1] We overrule Appellant's sole issue.

---

[1]The testimony of all witnesses during the guilt/innocence phase lasted approximately three and one-half hours.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


January 19, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.